IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS REMES, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:25-cv-01119 |
| v. | |
| J.W. DIDADO ELECTRIC, LLC., | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. *Preliminary Statement*

1. The plaintiff Nicholas Remes brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination based upon his (perceived) sexual orientation. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* when those claims are raised via an amended complaint upon their maturation on or after April 16, 2026. A jury trial is demanded.

B. *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about April 16, 2025, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2025-01830. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue on July 10, 2025.

5. This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. **The parties**

6. The plaintiff is an adult individual who resides in Hollidaysburg, PA (Blair County).

7. The defendant J.W. Didado Electric, LLC ("Didado" or "the company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, Allegheny County.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. **Factual Background**

10. The plaintiff is an electrician and is a member of IBEW Local 5. As a general matter, Local 5's members are dispatched from the Union Hall to work for employers for temporary jobs. The employers can lay the employees off at the end of the job or pick them up for permanent employment. In cases of layoff, the union employee puts his/her name back on the Union Hall's "board" and will be sent out on the next available job.

11. The plaintiff worked for Didado on three separate occasions, from October 2022 through December 2022; November 2023 through December 2023; and, most recently, October 2024 through December 2024. As detailed below, Didado laid the plaintiff off each time, and did not hire him for a full-time job because the hiring managers believed that the plaintiff is gay.

12. At all times relevant, the plaintiff performed the functions of his job competently and efficiently and was considered to be a satisfactory employee.

13. At tall times relevant:

    (a) Ron Ewing was a union member who was involved in the apprenticeship training program.

    (b) Ron Faciani was a foreman employed by Kiewit Corporation.

    (c) Kyle Templeton was an apprentice.

    (d) Sean Caddy was a journeyman.

    (e) Phil Hanyak was a journeyman.

    (f) Dave Kinsinger was a General Foreman/Superintendent employed by Didado.

    (g) Nate Schafer was a Area Project Manager employed by Didado.

    (h) Mike Tressle was a journeyman lineman/foreman employed by Didado.

    (i) Scott Valerio was a journeyman sub foreman employed by Didado.

    (j) Chad Farst was a journeyman wireman sub foreman employed by Didado

    (k) Pete [last name unknown] was a was a general foreman employed by Didado.

    (l) Matt Reber was a was a journeyman wireman sub foreman employed by Didado.

    (m) Jim Barnyak was a lineman general foreman employed by Didado.

    (n) Chris Fisanick was a foreman employed by GM McCorssin.

    (o) Rennick Dutton was a journeyman wireman general foreman employed by Didado.

    (p) Bill Eger was a journeyman inside wireman foreman employed by Didado.

    (q) Jim Bramlett was a journeyman wireman general foreman employed by Didado.

    (r) Brian Hanson was a journeyman wireman employed by Didado.

    (s) Arron Novotnak apprentice lineman.

    (t) Jason Kelly was a safety trainer employed by Didado.

14. While the plaintiff was still a child (approximately 10 years old at the time), he was sexually molested by two male kids who were neighborhood friends. He was traumatized by this event and during the years after that, the plaintiff did not understand why he kept having homosexual thoughts even though he had never been physically attracted to men. The plaintiff is and always has been heterosexual.

15. In June 2016, the plaintiff was accepted into the IBEW Local 5 apprenticeship and was assigned to work for Bob Biter Electric. He was well-liked and recognized as being an excellent worker. As part of his apprenticeship, the plaintiff was provided a laptop computer for his own personal and work use. From time to time, the plaintiff accessed and viewed gay pornography on the laptop (this was a trauma response because of what happened to him as a child). In approximately late 2017 or early 2018, his laptop broke, and he had to get it fixed or replaced. He deleted his browser history prior to turning it in to Ewing at the apprenticeship training facility. Unfortunately, his attempt to delete the browser history was not completely successful. Within a matter of weeks after the plaintiff turned in his computer, his classmates started accusing him of having gay pornography on his computer. Rumors like this travel fast, far and wide and ended up dogging him in the years to come.

16. The plaintiff worked for Kiewit Corporation in approximately September 2018 for approximately a year. His foreman was Faciani. On numerous occasions, Faciani told the plaintiff that "being gay is a sin." It was obvious to the plaintiff that Faciani believed that he was gay, even though he would not come right out and say it.

17. In approximately June 2020, the plaintiff started working at a different job site, this time for Thoroughbred Construction Group at the Allegheny Mountain tunnels. Faciani was also working there, along with Hanyak, Caddy and Templeton. Hanyak, Caddy and Templeton would

4

make gay innuendos anytime they saw him. Caddy made remarks to the plaintiff about how "being gay is wrong and ungodly."

18. In October 2022, the plaintiff took a job at Didado working at various substations. Kinsinger was the plaintiff's foreman. This was the plaintiff's first time working in substations. He liked this type of job because it was all control work and required a lot of thought was attention to detail. He excelled at doing this job.

19. The plaintiff wore prescription safety glasses while on the job. Tressle, a lineman, gave the plaintiff the nickname of "Goggles" because he always wore those glasses. Everyone on the job, including the plaintiff, thought that was humorous, so the nickname stuck.

20. The plaintiff worked at approximately ten different substations and praised for the work that he did. Everything went great on that job and the plaintiff was very happy. The plaintiff had a vacation planned during the first week of January 2023, so Didado gave him a layoff. Kinsinger told the plaintiff that he was very happy with his work and would call him back when work picked back up in the spring of 2023. The plaintiff was contacted by Valerio and Kinsinger a couple of times during the ensuing months. They told him that they were expecting work to pick back up soon and that they wanted to call him back.

21. Since he did not yet received a return to work call from Didado, the plaintiff accepted a job for Lighthouse Electric at the Nemacolin resort in Uniontown, PA. While there, a female apprentice approached the plaintiff and said, "I hear that there is a queer on the job," apparently not knowing that the plaintiff was the subject of that rumor. The plaintiff, frustrated that these rumors were still circulating, simply told the apprentice, "Who cares?"

22. In October 2023, Kinsinger called the Union Hall and requested that the plaintiff come back to work for Didado. Based upon information and belief, Kinsinger did not yet know about the rumors. However, that soon changed.

23. The plaintiff worked at the substation in Vandergrift, PA. Also working there was Hanyak and Tressle. After spending a couple of weeks at the substation in Vandergrift, the plaintiff was assigned to work at a substation in Johnstown, PA. Barnyak abruptly laid off the plaintiff in mid-December 2023. The plaintiff asked Kinsinger about the layoff and was told that there was no more work available for him. He also asked about being called back after the holiday. Kinsinger's attitude changed dramatically since the last time the plaintiff worked for him: instead of assuring the plaintiff that he would get him another job, he merely responded that he would contact him later if some work came up. Upon information and belief, Hanyak told Kinsinger and Tressle that the plaintiff was gay.

24. On or about October 4, 2024, the plaintiff reached out to Kinsinger and asked about the work situation at Didado. Kinsinger responded that Didado did not have any work and that the company was laying folks off. Upon information and belief, this was not true; there was work available; Kinsinger could have called the plaintiff back but chose not to because he believed that the plaintiff is gay.

25. On approximately October 18, 2024, just two weeks later, the plaintiff went back to the Union Hall and asked if there was any substation work available. The plaintiff was advised that the Union Hall had an open call for Didado at the Watson substation in Pittsburgh (this corroborated the plaintiff's belief that, contrary to what Kinsinger had told him, Didado did have work available). The plaintiff accepted the position and reported on October 21, 2024.

26. The plaintiff was given a rapid drug test screen. Dutton and Eger told the plaintiff, in the presence of other employees, that the screen came back positive and that he could not work for Didado. The plaintiff, who had never taken any illegal drugs during his adult life, protested, saying that the test results had to be in error. Dutton and Eger insisted that Didado could not hire him and that he should go back to the Union Hall.

27. The person from the testing company offered to give the plaintiff another test just to make sure, but Dutton insisted that the result will come back the same so there was no sense in doing it over. The plaintiff refused to leave until he was given another test. Finally, it was decided that the plaintiff would provide a urine sample which was submitted to the testing company.

28. The plaintiff was not allowed to start work until the test results came in, so he sat in the foreman's trailer. Dutton and Eger repeatedly told the plaintiff to just go to the Union Hall for another job assignment, "assuring" him that he would probably be picked up for a job by another contractor within a day. The plaintiff refused to quit and said that he would not do anything until his name was cleared. Upon information and belief, Dutton and Eger did everything they could to dissuade the plaintiff from working for Didado because they believed that they plaintiff is gay and did not want to work with him as a result.

29. On or about October 28, 2024, the plaintiff received a text that the drug test had come back clean and that he was cleared to start working for Didado.

30. On or about November 2, 2024, the plaintiff had a fever and was admitted to the hospital for suspected pneumonia. Although the fever broke relatively quickly and the plaintiff felt better, Dutton told him that he could not return to his job and, instead, told him to report to Kinsinger for a job on November 11. The plaintiff did so.

31. On November 11 and 12, 2024, the plaintiff reported to work and met up with Kinsinger and Bramlett. On both days, Bramlett and the plaintiff talked about how busy the company was and that Bramlett had talked to Valerio who wanted to be assigned to work with the plaintiff on a large job that was coming up.

32. Near quitting time on approximately November 13, 2024, Kinsinger, Bramlett, Hanson, Novotnak and the plaintiff were standing around talking. It was Kinsinger's last day working on this job because he had to go back to the substation expansion project in Yeagerstown. During the conversation, looked at the plaintiff and said, "I can't hire a guy that's gay" for a full-time position "because 'accidents' happen all the time." The plaintiff wasn't sure if everyone else knew that Kinsinger was talking about him. Bramlett chimed in and started talking about all the different ways a person could be "set up" to have an accident, including how the perimeter fence could be energized in way that would electrocute someone opening the gate.

33. On or about November 15, 2024, Bramlett took a call from Tressle. After getting off the phone, Bramlett told the plaintiff that Tressle told him that "Goggles is queer." Bramlett did not know that the plaintiff's nickname was "Goggles" or that Tressle was referring to him as being "queer." Later that afternoon, Bramlett was talking politics with Hanson. The topic of homosexuality came up and, Bramlett's view on that subject was so negative that Hanson said, "Wow, are you like a KKK member or a Neo-Nazi?" Bramlett said, "yeah, something like that."

34. Kinsinger said "being gay is just a mental illness anyway and you don't want those kinds of people in a substation." The plaintiff stood there listening to this homophobic conversation and was absolutely devastated.

35. On November 18, 2024, Bramlett, Novotnak, Hanson, Tressle and the plaintiff reported for work at the Squab Hollow substation. Bramlett referred to Hanson as "Goggles."

Tressle immediately corrected him and said, "[Hanson] is not Goggles" and then pointed at the plaintiff and said, "that's Goggles." It was like a switch went off in Bramlett's mind. After that, Bramlett stopped coming to the plaintiff with work plans and started giving all the work assignments to Hanson. Bramlett treated the plaintiff like he did not exist. Further, prior to finding out that the plaintiff was "Goggles" and therefore the one who was labeled as being gay, Bramlett talked to the plaintiff about work that would be available for the plaintiff to do after the holiday break. After this, Bramlett no longer spoke about it. Bramlett's hostility toward the plaintiff was palpable.

36. Evidently, Bramlett got filled in about the rumors about the plaintiff. During the ensuing days, Bramlett made many hostile and derogatory comments to the plaintiff, including that the plaintiff "did gay pornography."

37. On or about November 21, the crew at the Squab Hollow job were doing the final terminations to complete their work. At one point, the plaintiff was working in a disconnect where the line side was still energized. Bramlett walked behind the plaintiff (in what the plaintiff perceived to be a menacing way). The plaintiff was reminded of what Bramlett had said about "accidents" and had this horrible fear that Bramlett was going to push him into the energized panel.

38. The crew finished their work at Squab Hollow on November 22, 2024.

39. On November 22, 2024, Kinsinger texted the plaintiff and told him to report to the Seward Power Plant Substation on Monday, November 24.

40. Shortly after arriving to work on November 24, 2024, the plaintiff asked how long he would be there. Pete told the plaintiff that Kinsinger had told him to keep the plaintiff there until Christmas and then lay him off. Later that day, Bramlett showed up at the substation to do a confined space training. He made more comments about the plaintiff acting in gay pornography

and asked, "Do you want me to stop making all the gay comments?" He then laughed to signify that he did not care what the plaintiff's answer was.

41. On December 20, 2024, the plaintiff was laid off. Everyone else on the crew was told to return to work on January 6, 2025. The plaintiff sent a text message to Kinsinger asking about work after the New Year. Kinsinger did not respond.

42. The plaintiff was laid off because Kinsinger, other management personnel and coworkers perceived him as being gay. Further, Didado refused to hire the plaintiff on as a full-time employee because Kinsinger, other management personnel and coworkers, perceived him as being gay. Any other explanations offered by Didado were pretexts.

## **FIRST CAUSE OF ACTION**

43. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

44. The plaintiff is protected against discrimination on the basis of his sexual orientation under Title VII. Although the plaintiff is and always has been heterosexual, he was perceived as being homosexual.

45. The plaintiff was qualified for his position.

46. Despite his qualifications, the plaintiff was discharged.

47. The defendant's discharge of the plaintiff was in violation of Title VII because it was based upon his perceived sexual orientation.

48. The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA (when those claims mature on April 16, 2026), including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated: July 24, 2025